This is an appeal by the natural father from an order of the Jefferson County Probate Court denying a motion to set aside the adoption of his child.
Title 27, § 3, Code of Alabama 1940, in pertinent part provides:
 "No adoption of a minor child shall be permitted without the consent of his parents, but the consent of a parent who has abandoned the child, . . . may be dispensed with, . . ."
There is no contention that James F. Henderson, the natural father of the child and appellant herein, consented to the adoption. Hence, the dispositive issue before this court is whether the evidence introduced in the probate court is sufficient to support a finding of abandonment, thereby negating the consent requirement of Tit. 27, § 3. We find in the negative and accordingly reverse and remand.
Viewing the evidence in the most favorable light for the appellee, the record reveals the following:
James F. Henderson and his wife were divorced in September of 1967. Custody of their child, Jayme, was given to Mrs. Henderson, the natural mother. Thereafter, in November of 1968, Mrs. Henderson married Dr. Thomas W. Feary, appellee herein. The 1967 divorce decree, in addition to awarding custody of Jayme to Mrs. Henderson, required Mr. Henderson to make child support payments and granted him visitation rights.
Mr. Henderson substantially complied with the child support provisions of the decree and also exercised his visitation rights until May of 1971. At that time, he lost his teaching position with Jefferson State College. Thereafter, he fell behind in the monthly payments; and in September of 1971, a decree was entered which revoked, at least temporarily, his visitation rights. Although unemployed, Mr. Henderson paid the child support payments through December of 1971.
In early 1972, he left the state and went to Houston, Texas, where he lived with his brother until September or October of 1972. At that time, he returned to Birmingham, Alabama, where he was employed as a security guard, earning $1.60 per hour.
In July of 1973, after notice to Mr. Henderson by publication, a final decree of adoption was entered whereby Jayme Wheeler Henderson was declared to be legally adopted by Thomas W. Feary. Upon learning of the decree, Mr. Henderson filed a motion to set aside the adoption, which cause was initially set for hearing on May 30, 1974, and which was ultimately heard on March 23, 1976.
From January of 1972 until December of 1975, Mr. Henderson made no child support payments whatsoever. Neither did he ever exercise any of his visitation rights during the January 1972 through July 1973 period.
Against this background the trial court found "that during the period subsequent to September 1, 1971, the natural father, James F. Henderson, had abandoned said child."
Appellee contends that the finding of a probate court based on the examination of witnesses ore tenus is presumed to be correct and will not be disturbed on appeal unless palpably erroneous. This is an established principle of law in Alabama.Davis v. Davis, 278 Ala. 328, 178 So.2d 154. However, this presumption of correctness applies only to findings of fact,Rafield v. Johnson, 294 Ala. 235, 314 So.2d 695, not to conclusions resulting from application of the facts. Robert G.Lassiter Co. v. Nixon, 218 Ala. 484, 119 So. 17. Here, construing the facts in a manner most supportive of the probate judge's finding nevertheless requires reversal. The recited facts do not as a matter of law constitute abandonment.
 "[A]bandonment imports any conduct on the part of the parent which evinces a settled purpose to forgo all parental duties and relinquish all parental claims to the child, and to renounce and forsake the child entirely. . . ." (2 Am. Jur.2d Adoption § 32)
Here, as was previously stated, there is evidence establishing both that the natural father failed to make child support *Page 810 
payments for eighteen months and also that he neglected to exercise his visitation rights for a similar period.
Similar circumstances were before the Supreme Court of Alabama in Schwaiger v. Headrick, 281 Ala. 392, 203 So.2d 114. In this case the natural father moved to set aside adoption proceedings instituted by the spouse of the natural mother, the mother having been granted custody of the child pursuant to a divorce decree rendered two and one-half years earlier. The divorce decree required the father to make monthly child support payments and awarded him visitation rights. He had made only two child support payments in the two and one-half year period preceding the adoption proceeding. No factual data concerning the number of visitations made by the father is set forth in the opinion; however, the court stated:
 "The most that can be said is that the natural father quit trying to visit the child; and, also, that after making two monthly payments for the support of the child, as was his obligation by agreement and under the decree, he quit paying. . . .
 "We do not construe the conduct of the father to evince a settled purpose to forego all parental duties and relinquish all parental claims to the child. . . . The father's failure to comply with the order for support of the child, . . . and his failure to visit the child . . . does not . . . constitute abandonment within the purview of Section 3, Title 27, Code of 1940." (281 Ala. at 394, 203 So.2d at 115
and 116)
In the instant case, as in Schwaiger, supra, there existed between the parties a great deal of hostility and friction, an elaboration of which would serve no beneficial purpose. Moreover, the facts herein establish a more convincing case for the natural father than in Schwaiger. Here, Mr. Henderson, at the time of the hearing on the motion to set aside the adoption, had completely eliminated the arrearage of child support. See Butler v. Giles, 47 Ala. App. 543, 258 So.2d 739.
Furthermore, there was testimony from Dr. Feary, Mr. Henderson, the latter's mother, and the child which tended to establish that Mr. Henderson had contacted Jayme to give him presents on at least two occasions during the eighteen months.
Additionally, it would appear that although the child support payments were not made for a term of approximately eighteen months prior to the adoption, ample reason existed for the nonpayment. For the first nine of those eighteen months, Mr. Henderson was unemployed; for the second nine months of the relevant period, he was making only $1.60 per hour and working forty hours per week.[1]
 "An abandonment . . . within the purview of the adoption laws must be an intentional abandonment. . . .
. . . . .
 "[V]oluntary abandonment does not include an act or a course of conduct pursued by a parent which is done through force of circumstances or dire necessity, but it is used more in the sense of a wilful act or course of conduct, such as would imply a conscious disregard or indifference to the child in respect to the parental obligations owed. . . ." (35 A.L.R.2d at 668-69)
Under the circumstances of this case, we cannot agree with the probate court's finding that Mr. Henderson's conduct constituted abandonment, in that the facts display no manifestation of "conscious disregard or indifference" for the child. Put another way, the facts at best only show the father did not visit with the child and did not make child support payments and, as the Supreme Court of Alabama noted inSchwaiger, supra, this does not constitute abandonment. Indeed, we find applicable to these facts a statement made by this court in Butler, supra:
 "In that case [Schwaiger], even though the Supreme Court did not provide guidelines as to what constitutes abandonment *Page 811 
as the word is used in the adoption statute, it did provide rather clear guidelines as to what does not constitute such abandonment. When such guidelines are applied to the facts in this case we feel impelled to hold that the Probate Court was . . . wrong in finding that appellee [appellant herein] had abandoned his child, . . ." (47 Ala. App. at 547, 258 So.2d at 742-43)
The disposition of the preceding issue renders unnecessary the resolution of the other issues presented upon appeal.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] In September of 1974, Mr. Henderson obtained a teaching position with Tuskegee Institute.