This is an adoption case.
The natural father, Roger Gillespie, appeals from a judgment of the Circuit Court of DeKalb County holding that he had abandoned his infant daughter, Jennifer.
The sole issue on appeal is whether the evidence supports the trial court's finding that Gillespie had abandoned his daughter and, therefore, his consent to her adoption was unnecessary.
Section 26-10-3, Code of Alabama 1975, provides that the consent of a child's parents must be obtained for the child's adoption unless the parents have abandoned the child.
The record reveals the following facts:
On September 6, 1976 the mother of Jennifer was killed and Jennifer's father, Roger Gillespie, was arrested and charged with her death. He later pleaded guilty to voluntary manslaughter and was sentenced to serve four to twelve years in an Illinois prison. Gillespie served two and one-half years of this sentence, was paroled, and now lives with his parents in West Virginia.
Shortly after the mother's death, Jennifer was taken to Alabama where she stayed for a short while with a maternal aunt. Jennifer was four and one-half months old. After several weeks, the aunt entrusted the care of Jennifer to Mr. and Mrs. Donald Bailey, who were neighbors. Jennifer has been with the Baileys since that time except for one night after the district court had given custody of Jennifer to the maternal aunt and her husband.
The Baileys filed a petition for adoption of Jennifer in the DeKalb County Probate Court on September 9, 1977. Roger Gillespie's mother and father filed a petition in the DeKalb County District Court on December 7, 1977 seeking custody of Jennifer. (At no time has Gillespie sought the custody of his daughter from an Alabama court.) In said petition they also asked that the Baileys' adoption proceedings be transferred to the district court for hearing. The adoption matter was transferred to the district court on December 15, 1977.
After a hearing, temporary custody of Jennifer was placed with the Baileys. No *Page 132 
further action was taken on the adoption matter. Both proceedings were appealed to the circuit court.
After an ore tenus hearing in the circuit court, custody of Jennifer was awarded to the Baileys. Later the Baileys moved the circuit court to hear and decide their petition for adoption of Jennifer. The natural father was notified and the matter came on for hearing before the court. After testimony was taken the court held that the natural father had abandoned his daughter and his consent to her adoption by the Baileys was, therefore, not required.
The evidence also shows that after Roger Gillespie was charged with killing his wife, he was released on bond and remained so for ten months. During the time that he was free on bond, Gillespie on three occasions sent the Baileys small amounts of money for Jennifer. For the two and one-half years that he was in prison, he did not send his daughter any money, gifts, cards or letters. After being released from prison on parole, Gillespie obtained a job with a bakery in West Virginia and after his second payday sent Jennifer $50. This money was sent about two weeks before the trial of the adoption matter. Although he sent some money to his daughter after being released from prison, Gillespie did not write or call his daughter nor make any other effort to see her or contact her.
From the time the child was taken from Illinois after her mother's death until the trial of the abandonment issue, Gillespie had seen his daughter one time for a period of fifteen minutes. This visit took place in Alabama at a relative's house. Mrs. Bailey took the child to the relative's house for the visit. She stated that Gillespie did not speak to the child, did not ask to hold the child and did not touch the child. Furthermore, at no time while the father was out on bond did he write to the child, call her on the telephone, or send her gifts, cards or letters. He did, however send small amounts of money to the Baileys on three different occasions. During the period when he was out of jail on bond, Gillespie asked Mr. Bailey to keep Jennifer and not let the maternal grandparents have her. After being incarcerated Gillespie was requested to give his consent to Jennifer's adoption by the Baileys but he refused.
In order for a parent to be deemed to have abandoned his child within the purview of the adoption statute, i.e. § 26-10-3, it must appear that the parent has intentionally abandoned the child. That is, the parent has undertaken a course of conduct toward the child which would imply a conscious disregard or indifference to parental obligations owed to the child. Straszewicz v. Gallman, Ala.Civ.App.,349 So.2d 593 (1977); Henderson v. Feary, Ala.Civ.App.,340 So.2d 808, cert. denied, Ala., 340 So.2d 811 (1976).
Assessing the evidence of the case in the light of the presumption of correctness, we conclude that the judgment at bar is sufficiently supported by the evidence to withstand the appeal.
In summary, the evidence to which we refer is the unlawful killing of the child's mother, resulting in the father's imprisonment on a four to twelve year sentence; the father's relinquishment of the child's care to relatives; the father's consent for strangers to keep the child so long as they did not allow the maternal grandparents to have her; the father's failure to call, write or send his daughter gifts during the entire time that she has been in Alabama; and the total lack of concern for and interest in the daughter exhibited by the father during his one visit with her. Thomas v. Culpepper, Ala.Civ.App., 356 So.2d 656 (1978). The few instances in which he sent money to the Baileys for the child and his refusal to consent to the adoption do not require a different finding.
We are not to be understood as holding that incarceration per se constitutes abandonment, but we do hold that it is a factor to be considered along with the other factors indicating abandonment. Thomas v. Culpepper, supra. *Page 133 
Therefore we hold that the evidence supports the trial court's finding that Gillespie had intentionally relinquished the rights and obligations of parenthood and, as a result, had abandoned his daughter within the meaning of the adoption statute.
AFFIRMED.
HOLMES, J., concurs.
WRIGHT, P.J., concurs in the result.